## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>VICTORIA P. ROBERTS<br>SSN: xxx-xx-7096<br><br>   Debtor.<br>_____<br><br>TOGETHER REAL ESTATE HOLDINGS, LLC,<br>Chapter 7, Trustee,<br><br>   Plaintiff,<br><br>v.<br><br>VICTORIA P. ROBERTS,<br><br>   Defendant. | Case No. 21-16000-TBM<br><br>Chapter 7<br><br><br><br><br>Adv. Pro. 22-01043-TBM |

## MOTION TO DISMISS SECOND CLAIM FOR RELIEF PURSUANT TO
## FED. R. BANKR. P. 7012(b)(6)

The Defendant, Victoria P. Roberts ("Defendant" or "Debtor"), by and through her attorneys, Kutner Brinen Dickey Riley, P.C., moves the Court to dismiss the Second Claim for Relief seeking a nondischargeable claim pursuant to 11 U.S.C. § 523(a)(4) asserted by the Plaintiff, Together Real Estate Holdings, LLC ("TREH" or "Plaintiff") pursuant to Fed. R. Bankr. P. 7012(b)(6)  and in support thereof states as follows:

### I.   BACKGROUND

1. The Debtor filed her voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code on December 10, 2021.  M. Stephen Peters was appointed as the Chapter 7 Trustee.

2. Pre-petition, the Debtor was engaged in business as the manager and 50% owner of Artemis Realty Investments, LLC ("Artemis"), a company formed to acquire real property, make improvements to the properties acquired, and then resell the properties and generate a profit.

1

3. In order to fund the down payment required for the purchase of an investment property, Artemis sought investors or lenders to obtain the funds necessary.

4. In or around June 2019, Artemis entered into a loan with TREH, a third party company to which the Debtor had no prior connection, in the amount of $20,000 for an anticipated construction project located in Denver, Colorado.

5. The property was ultimately not purchased, and a second prospect was identified on Emerson Street in Denver, Colorado ("Emerson Property"). The loan from TREH was used primarily as the earnest money for the purchase of the Emerson Property at the direction of TREH.

6. Artemis subsequently entered into a second loan with TREH in the original principal amount of $260,000. While the parties were in negotiations regarding the terms of a promissory note, TREH wired funds in the amount of $260,000. At the times that funds were wired, Artemis and TREH had agreed on the principal amount of the loan, the interest rate, and monthly payments for the loan. The remaining terms remained subject to ongoing negotiations.

7. Artemis and TREH were unable to reach an agreement on the final terms of a promissory note, and no promissory note was ever signed.

8. Artemis used the loans from TREH to fund the down payment for the purchase of the Emmerson Property. The remaining purchase price for the Emerson Property was funded with a loan from Triumph Capital Partners, and was secured by a Deed of Trust on the Emerson Property.

9. Prior to the purchase of the Emerson Property was purchased, Artemis had discussed providing a deed of trust to TREH to secure its loan. At the time that the funds were advanced, no deed of trust had been signed nor prepared to be signed at a later date. Artemis subsequently learned that Triumph would consider additional liens against the Emerson Property an event of default, and as a result, was unable to provide a deed of trust to TREH.

10. As a result of delays caused by the COVID-19 pandemic, Artemis was unable to complete renovations and resell the property on its anticipated time frame, and as a result, Artemis began to experience financial difficulties. The financial difficulties led to a default on the agreed upon payments to TREH, and TREH filed a Complaint and Jury Demand in the Denver District Court, Case No. 2020CV033195 ("State Court Litigation"), asserting claims against Artemis, the

Debtor, and Karen Bordner, an equity interest holder in Artemis.[1]

11. The State Court Litigation was subsequently stayed as a result of the bankruptcy filings by the Debtor and Ms. Bordner.

12. TREH subsequently filed the above captioned Adversary Proceeding, asserting that its claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and/or 11 U.S.C. § 523(a)(4).

13. As set forth more fully herein, the Plaintiff's Second Claim for Relief from a nondischargeable claim under section 523(a)(4) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), as it fails to set forth any fact on which relief can be granted.

## II. ARGUMENT

14. Pursuant to Rule 12(b)(6), dismissal of an action is appropriate when the plaintiff cannot establish any set of facts upon which relief can be granted. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). "To survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Crane v. Utah Dep't of Corr.*, 14 F.4th 1296, 1302-03 (10th Cir. 2021)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint meets the plausibility standard when the plaintiff pleads sufficient factual allegations that, accepted as true, draws a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1303. The Court need not accept conclusory allegations made without factual support. *Tonkovic v. Kan. Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998).

15. Section 523(a)(4) provides that a creditor may have a nondischargeable claim for a debtor from "fraud or defalcation while acting in a fiduciary capacity." Courts narrowly construe "fiduciary" for the purposes of section 523(a)(4), "meaning that the applicable nonbankruptcy law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property." 4 Collier on Bankruptcy P 523.10 (16th 2022). *See also Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996)("Thus an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)"); *Duggins v. Bratt (In re Bratt)*, 489 B.R. 414, 426 (Bankr. D. Kan. 2013)(holding that an express trust or a technical trust that arises by statute must be created in order to find a fiduciary relationship under section 523(a)(4) and further

---

[1] Ms. Bordner has filed a Chapter 11 bankruptcy case, Case No. 21-16002-JGR, and TREH has commenced a similar nondischargeability proceeding against Ms. Bordner. Out of the abundance of caution, a Notice of Related Case is being filed in both Adversary Proceedings contemporaneously herewith.

holding that general fiduciary duties that arise under state law principles are insufficient to support a claim under section 523(a)(4)).

16. The Complaint fails to allege any facts that, even if accepted as true, give rise to a claim under section 523(a)(4).

17. The Complaint broadly alleges that "Together Real Estate and Debtor has (sic) an express trust" but provides no support for this statement, nor pleads additional facts to support it.

18. An express trust is "defined in a written or oral agreement that create[s] the relationship and identifie[s] the property held in trust (the *res*), the trustee, and the trustee's duties with express to the *res*." *Bratt*, 489 B.R. at 425-26.

19. The only relationships that exist is a that of a lender and borrower as between TREH and Artemis. The allegations in the Complaint, accepted as true solely for the purposes of this Motion, establish that TREH lent money to Artemis (not to the Debtor, individually). The Complaint does not allege that a written trust document was created, does not allege that trust *res* was identified, and does not allege that Artemis became a trustee of a trust. The Complaint does not allege that that the Debtor, individually, entered into any sort of an agreement with TREH, and certainly fails to allege that the Debtor entered into a trust agreement with TREH.

20. Instead, the Complaint broadly states that an express trust exists without alleging how the trust came into being or providing factual allegations in support of the existence of any relationship beyond the lender/borrower relationship between TREH and Artemis.

21. Instead, the Complaint offers nothing more than conclusory allegations that TREH "reposed a special trust or confidence" in the Debtor, and that the Debtor was "a fiduciary to Together Real Estate at the time the debt was created." These allegations do nothing support the creation or establishment of a trust between TREH and the Debtor.

22. The mere existence of a lender/borrower relationship between TREH and Artemis is facially insufficient to establish the existence of an express trust fiduciary relationship between TREH and the Debtor. Accordingly, the Plaintiff has failed to allege plausible facts upon which a nondischargeable claim can be granted under section 523(a)(4), and the Second Claim for Relief should be dismissed in its entirety.

WHEREFORE, the Defendant prays the Court make and enter an Order dismissing the Plaintiff's Second Claim for Relief, and for such further and additional relief as the Court may appear just and proper.

DATED: April 5, 2021                    Respectfully submitted,

                                        By:  /s/ Keri L. Riley
                                            Keri L. Riley, #47605
                                            **KUTNER BRINEN DICKEY RILEY, P.C.**
                                            1660 Lincoln St., Suite 1720
                                            Denver, CO 80264
                                            Telephone: (303) 832-2400
                                            E-Mail: klr@kutnerlaw.com